STATE of Wisconsin, Plaintiff-Respondent,

v.

John E. OLSON, Defendant-Appellant. †

Court of Appeals

*No. 84–1537–CR. Submitted on briefs May 13, 1985.—Decided November 21, 1985.*
(Also reported in 380 N.W.2d 375.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Robert J. Ruth* and *Bolgrien, Ruth & Rentz, S.C.* of Beloit.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Gartzke, P.J., Dykman, J., and Bruce F. Beilfuss, Reserve Judge.

GARTZKE, P.J. John Olson appeals from a judgment of conviction for delivering a controlled substance, tetrahydrocannabinol, contrary to secs. 161.14(4)(t) and 161.41(1)(b), Stats. Olson sold approximately four grams of marijuana to an undercover deputy sheriff February 10, 1983. He argues that sec. 161.14(4)(t) denies him equal protection because it irrationally classifies tetrahydrocannabinols (THC), including those in marijuana, as a Schedule I controlled substance, and because marijuana dealers are subjected to the same criminal sanctions as dealers of more dangerous drugs. We conclude that Olson may raise his equal protection argument on appeal, notwithstanding his guilty plea. Olson also argues that because the trial court considered his refusal to name his marijuana supplier, it abused its discretion when sentencing him. We reject his contentions and affirm.

## A. *Equal Protection*

### 1. *Statutes*
Wisconsin has adopted the Uniform Controlled Substances Act, ch. 161, Stats.[1] The act classifies controlled substances according to five schedules. A substance is listed in Schedule I if it "(1) [h]as high potential for abuse; and (2) [h]as no accepted medical use in treatment in the

---

[1] The legislature intended the state legislation to complement the federal controlled substances act enacted in 1970. *Berg v. State,* 63 Wis.2d 228, 236 n.7, 216 N.W.2d 521, 525 (1974).

United States or lacks accepted safety for use in treatment under medical supervision." Sec. 161.13. Schedule I includes "[t]etrahydrocannabinols, commonly known as 'THC', in any form including tetrahydrocannabinols contained in marijuana, obtained from marijuana or chemically synthesized." Sec. 161.14(4)(t). Delivery of a Schedule I controlled substance which is not a narcotic drug is subject to a fine of not more than $15,000 or imprisonment not more than five years or both. Sec. 161.41(1)(b). The statutory definition of a narcotic drug in sec. 161.01(15) does not include tetrahydrocannabinols.

### 2. *Motion to Dismiss, Hearing and Ruling*

Olson moved to dismiss the information on grounds that sec. 161.14(4)(t), Stats., on its face and as applied to him, is unconstitutional. He argues that THC is not properly classified as a Schedule I controlled substance because it has an accepted medical use in treatment in the United States and does not lack accepted safety for use in treatment under medical supervision.[2] His motion asserts that consequently the classification of THC in Schedule I is not rationally related to a legitimate state interest and is not a valid exercise of the police power, contrary to Wis. Const. art. I, secs. 1 and 8, and U.S. Const. amends. V and XIV. His appeal is limited to the equal protection issue.

Two defense witnesses testified at the motion hearing. Each testified that THC has proven accepted therapeutic use in controlling nausea resulting from chemotherapy administered to cancer patients and in treating glaucoma. According to one witness, a pharmacist and pharmacologist, 2,600 physicians and 715 institutions

---

[2] Olson does not contend that the criminalization of THC is unconstitutional, that possession of marijuana involves a fundamental interest, or that his right of privacy has been violated. He also does not suggest a more appropriate classification for THC. He simply argues that THC fails to meet the criteria for classification in Schedule I.

lawfully dispense THC in the United States, but the witness agrees that disputes exist among doctors and pharmacists concerning THC's acceptance for medical use and treatment. The second witness, a physician, testified that THC is safe and efficacious when given under strict medical supervision. In his view, a drug has an "accepted medical use" if the use is agreed upon by a body of physicians.

The prosecution's only witness was a staff member of the state's controlled substances board. He testified that the board will reschedule a controlled substance if the federal food and drug administration approves a "new drug application" for the substance. In his view, "accepted medical use" means that the FDA has approved a new drug application for a substance. The Federal Controlled Substances Act places marijuana and THC in Schedule I. 21 U.S.C. sec. 812, Schedule 1(c)(10) and (c)(17). The findings required under that act for a Schedule I substance are: high potential for abuse, no currently accepted medical use in treatment in the United States, and lack of accepted safety for use under medical supervision. 21 U.S.C. sec. 812(b)(1). FDA interprets the term "accepted medical use" to mean lawfully marketed under the Federal Food, Drug and Cosmetics Act, 21 U.S.C. sec. 301 et seq. 47 Fed. Reg. 28141, 28150 col. 3 (1982). A drug may be marketed lawfully under the federal Food, Drug and Cosmetics Act after approval of a new drug application for the substance. 47 Fed. Reg. at 28150 col. 3. FDA has concluded that marijuana should remain in Schedule I. 47 Fed. Reg. at 28152 col. 2. FDA had previously concluded in another proceeding that THC should not be rescheduled unless and until FDA approved a new drug application for THC. 47 Fed. Reg. 10080, 10086 col. 1 (1982).

At the conclusion of the hearing, the trial court denied Olson's motion to dismiss. The court concluded that because of the ongoing dispute regarding the classification of THC, its Schedule I classification is valid, even though it has limited uses in the treatment of chemother-

417

apy reactions and glaucoma. The court made no findings or conclusions concerning THC's "accepted medical use" or "accepted safety for use," as those terms are used in sec. 161.13, Stats.

### 3. Olson's Guilty Plea

Olson made an *Alford* plea[3] of guilty after the parties stipulated to the scope of appellate review. They agreed that Olson reserved the right to appellate review of the order denying his motion to dismiss, that the constitutional issue he raised is jurisdictional, and that he had properly preserved the issue for review. The state agreed to take no position contrary to the stipulation and would not argue that Olson's guilty plea barred appellate review.

The stipulation was brought to the trial court's attention. The court neither approved nor commented on it. True to its word, the state's brief on appeal does not refer to the stipulation or to the effect of the guilty plea on appellate review.

### 4. Guilty-Plea-Waiver Rule Generally

The general rule is that a defendant who pleads guilty waives the right to raise nonjurisdictional defects and defenses, including claims of constitutional dimension.[4] *State v. Riekkoff,* 112 Wis.2d 119, 123, 332 N.W.2d 744, 746 (1983). The *Riekkoff* court concluded:

---

[3] A trial court may accept an *Alford* plea of guilty. *State v. Johnson,* 105 Wis.2d 657, 663, 314 N.W.2d 897, 900 (Ct.App. 1981). An *Alford* plea derives its name from *North Carolina v. Alford,* 400 U.S. 25, (1970), in which the Court held that an express admission of guilt is not a constitutional requisite of a guilty plea. *Id.* at 37. In an *Alford* plea, the defendant pleads guilty but protests his innocence. *Johnson,* 105 Wis.2d at 659 n.1, 314 N.W.2d at 899.

[4] Olson's *Alford* plea creates no exception to the guilty-plea-waiver rule. An *Alford* plea has been likened to a plea of *nolo contendere. Alford,* 400 U.S. at 37. A plea of *nolo contendere* waives nonjurisdictional

[I]n situations in respect to orders or objections to which the guilty-plea-waiver rule may apply, it is to be applied even though a defendant expressly states his intent not to waive certain issues on appeal and makes that intention a condition of his plea and even though the prosecutor and the judge acquiesce in that intention.

*Id.* at 127–28, 332 N.W.2d at 749. The court held that it would not permit a guilty plea to reserve an issue for appeal except as provided by statute, even if the state agreed not to argue that the guilty plea bars appellate review. *Id.* at 129–30, 332 N.W.2d at 749. No statute creates an exception on the facts before us, and the parties' stipulation therefore is ineffective to prevent consideration of the guilty-plea-waiver rule.

Nor does the stipulated description of the reserved constitutional claim as jurisdictional resolve the issue. Whether a criminal defendant who pleads guilty has lost the right to contest an issue of fact or law on appeal is an issue of law. The agreement of the parties on questions of law does not generally bind an appellate court. *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 289 (1917).

Accordingly, we must consider the application of the guilty-plea-waiver rule. The first question is whether Olson raised a jurisdictional defense by claiming that sec. 161.14(4)(t), Stats., is unconstitutional. If he did not, the second question is whether he is nevertheless entitled to reassert his constitutional claim on appeal. The second question remains because the *Riekoff* court refused to hold that a guilty plea waives all defenses except those related to subject-matter jurisdiction. 112 Wis.2d at 124 n. 2, 332 N.W.2d at 747.

---

defects occurring before the plea. *State v. Princess Cinema of Milwaukee,* 96 Wis.2d 646, 651, 292 N.W.2d 807, 810 (1980). An *Alford* plea has the same effect.

### 5. *Facial Invalidity*

If Olson has indeed asserted a defense that sec. 161.14(4)(t), Stats., "on its face" denies him equal protection, then he has raised a jurisdictional issue. "A statute, unconstitutional on its face, is void from its beginning to the end. . . ." *State ex rel. Comrs. of Pub. Lands v. Anderson,* 56 Wis.2d 666, 672, 203 N.W.2d 84, 87 (1973). A challenge to the facial validity of a statute raises a jurisdictional defense which survives a guilty plea. *State ex rel. Skinkis v. Treffert,* 90 Wis.2d 528, 538–39, 280 N.W.2d 316, 321 (Ct.App. 1979).

A defendant who merely claims "facial invalidity" has not necessarily asserted the defense. A motion claiming "facial invalidity" may itself show that a nonfacial challenge is raised. That is the case here.

For purposes of equal protection analysis, a statute is said to be facially invalid if its unconstitutionality can be determined without proof of extrinsic circumstances. Section 161.14(4), Stats., lists almost one hundred specific substances in Schedule I. To determine whether it is irrational to classify THC with the other substances listed in Schedule I, we must compare THC with those substances. It is impossible to intelligently compare THC with the other substances listed in Schedule I except through resort to information outside the statute. Similarly, it is impossible to intelligently compare the classification of offenders charged with violations involving Schedule I substances without resort to information outside the statute.

Defendant's motion itself shows that it depends on information outside the statute. His equal protection attack is based on the propositions that THC has an accepted medical use in treatment in the United States and does not lack accepted safety for use in treatment under medi-

cal supervision. The truth or falsity of those propositions cannot be established except in part by proof of extrinsic facts.

Consequently, defendant has not asserted a facial invalidity defense. His equal protection defense is nonjurisdictional.

### 6. *Right of Review*

The *Riekoff* court expressly reserved "the intriguing and significant question of what, if any, nonjurisdictional claims may not be barred by a guilty plea." 112 Wis.2d at 124 n.2, 332 N.W.2d at 747. In *State v. White,* 112 Wis.2d 178, 179, 332 N.W.2d 756, 757 (1983), the court again observed that it has not "determine[d] the exact boundaries of the general rule that a voluntary entry of a guilty plea waives the right to raise on appeal nonjurisdictional issues." Whether a guilty plea waives a claim that a statute denies a criminal defendant equal protection of the laws for reasons not appearing on the face of the statute is therefore an open question.[5]

Although the question has not been settled by the United States Supreme Court, its decisions convince us that Olson retains his equal protection claim on appeal.

*Blackledge v. Perry,* 417 U.S. 21 (1974), held that a state violated a defendant's right to due process by bring-

---

[5] We *sua sponte* noted the issue. We may do so. *Shea v. Grafe,* 88 Wis.2d 538, 545–46. 274 N.W.2d 670, 674 (1979); *Bielski v. Schulze,* 16 Wis.2d 1, 6, 114 N.W.2d 105, 107 (1962). Consistent with the parties' stipulation, we requested Olson but not the state to brief it. Olson complied with our request.

We note that the supreme court has applied the guilty-plea-waiver rule to deny a defendant's right to assert a statute's invalidity on appeal. *Mack v. State,* 93 Wis.2d 287, 296, 286 N.W.2d 563, 567 (1980); *Flores v. State* 69 Wis.2d 509, 510, 230 N.W.2d 637, 638 (1975). We conclude from the court's later statements in *Riekoff* and *White,* however, that the question is still open. *See also Princess Cinema,* 96 Wis.2d at 651 n.4, 292 N.W.2d at 810 (whether defendant was entitled to bring constitutional claim on appeal as a matter of right not decided).

ing a felony charge against him after he had appealed a misdemeanor conviction on the same facts. The *Blackledge* court held that the defendant's guilty plea to the felony charge did not preclude him from later raising the due process claim. The court distinguished prior decisions holding that "antecedent constitutional violations" could not be raised after a guilty plea, saying that those violations had not gone "to the very power of the State to bring the defendant into court to answer the charge brought against him." 417 U.S. at 30. The *Blackledge* court said that the right the defendant asserted was "the right not to be haled into court at all." *Id.*

*Blackledge* was followed by *Menna v. New York,* 423 U.S. 61 (1975) (per curiam), which held that a defendant did not lose his right to assert a double jeopardy defense to a second charge by pleading guilty to it. The *Menna* Court explained that a guilty plea renders irrelevant constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not prevent a conviction, but, "[h]ere, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established." 423 U.S. at 62 n.2.

The *Menna* rationale requires us to hold that defendant's guilty plea does not deprive him of the right on appeal to continue his equal protection attack upon sec. 161.14(4)(t), Stats., even though the statute is facially valid. If defendant showed that facts exist demonstrating that the statute denies him equal protection, then the state may not convict him, even if his factual guilt is established. *Menna* requires that we review his claim that he made this showing.[6]

---

[6] Several intermediate appellate courts have recognized that a defendant may challenge the statute under which he or she is charged despite pleading guilty. *Country v. Parratt,* 684 F.2d 588, 589 n.1 (8th Cir.), *cert. denied,* 459 U.S. 1043 (1982); *United States v. Broncheau,* 597

The Michigan court of appeals reached the same result on comparable facts by a shorter route in *People v. Schmidt*, 272 N.W.2d 732 (Ct.App. Mich. 1979). There the defendant pleaded guilty to the charge of possessing marijuana, after challenging on equal protection grounds the placement of marijuana in Schedule I of the Michigan Controlled Substances Act. He contended on appeal that he showed in the trial court that marijuana is relatively harmless and therefore arbitrarily listed in Schedule I. The court of appeals held that defendant had not lost the right to contest the constitutionality of the statute. *Id.* at 733 (citing *People v. Johnson*, 240 N.W.2d 729 [Mich.], *cert. denied*, 429 U.S. 951 [1976]). The *Johnson* court relied on *Blackledge* and *Menna* to uphold a double jeopardy claim against the argument that a guilty plea had waived the right to assert it.[7] *Johnson*, 240 N.W.2d at 738–39.

---

F.2d 1260, 1262 n.1 (9th Cir.), *cert. denied*, 444 U.S. 859 (1979); *United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir. 1978) (per curiam), *cert. denied*, 440 U.S. 918 (1979); *Journigan v. Duffy*, 552 F.2d 283, 289 (9th Cir. 1977); *Coleman v. Burnett*, 477 F.2d 1187, 1194 n.20 (D.C. Cir. 1973); *United States v. Cox*, 464 F.2d 937, 940 (6th Cir. 1972); *United States v. Gonzalez-Parra*, 438 F.2d 694, 696 (5th Cir.), *cert. denied*, 402 U.S. 1010 (1971); *United States v. D'Amato*, 436 F.2d 52, 53, (3d Cir. 1970). State courts also recognize that these claims are not waived by a guilty plea. *People v. Schmidt*, 272 N.W.2d 732, 733 (Ct.App. Mich. 1979); *People v. Lee*, 448 N.E.2d 1328, 1329 (N.Y. 1983), *Armijo v. State*, 678 P.2d 864, 867 (Wyo. 1984). The Wyoming supreme court noted that "[l]ittle purpose would be served by requiring a defendant to insist upon a trial in order to preserve his opportunity to challenge the constitutionality of the statute." *Armijo*, 678 P.2d at 867.

[7] Our supreme court has cited *Menna* and *Johnson* when holding that double jeopardy claims are not waived by a guilty plea. *State v. Morris*, 108 Wis.2d 282, 284 n.2, 322 N.W.2d 264, 265 (1982). The *Morris* court also cited *United States v. Gaertner, supra. Gaertner* involved a double jeopardy claim, but the defendant also challenged the constitutionality of the federal marijuana laws. 583 F.2d at 312. The *Gaertner* court concluded that defendant's claim that he was prosecuted under an unconstitutional statute went to the very power of the government

We therefore review defendant's contention that he showed that including THC in Schedule I is an irrational classification of the drug because it has an accepted medical use and has accepted safety for use in treatment.[8]

### 7. *Accepted Medical Use and Accepted Safety*

■ Constitutional analysis starts with noting that the challenger must show beyond a reasonable doubt that the statute under attack is unconstitutional. *J. F. Ahern Co. v. Building Commission,* 114 Wis.2d 69, 100, 336 N.W.2d 679, 694 (Ct.App. 1983). We must indulge every presumption to sustain the constitutionality of the statute. *Id.*

That THC has a high potential for abuse is unchallenged in this case. Consequently, defendant's constitutional challenge is such that he must show both that THC has an "accepted medical use in treatment in the United States" and that it has "accepted safety for use in treatment under medical supervision." If either of those circumstances does not exist, THC is properly classified as a Schedule I substance, since its potential for abuse is undisputed. Sec. 161.13, Stats.

Defendant assumed at the trial, and continues to assume, that expert testimony can establish that THC has

to invoke criminal process against him and was not barred by his guilty plea. *Id.* at 311.

[8] The state urges that we apply the exhaustion of administrative remedies doctrine to avoid reaching the constitutional issue. Because the controlled substances board may reclassify a controlled substance in a ch. 227, Stats., rulemaking proceeding, sec. 161.11(1), Stats., citizens may petition for a reclassification. Sec. 227.015(1). Since no administrative proceedings are under way, the exhaustion doctrine cannot apply. *Sawejka v. Morgan,* 56 Wis.2d 70, 79, 201 N.W.2d 528, 533 (1972). Moreover, the state contended at the trial that "accepted medical use" means FDA approval of a new drug application. That being the case, petitioning for rulemaking would probably be futile. The exhaustion remedy does not apply for that additional reason. *Nodell Inv. Corp. v. Glendale,* 78 Wis.2d 416, 425 n.12, 254 N.W.2d 310, 316 (1977).

an accepted medical use and accepted safety in treatment, regardless whether FDA has approved a new drug application for the substance. His argument on appeal does not touch that issue, although it was raised at the trial. His brief is devoted primarily to reviewing various historical misconceptions held by the public, the courts and legislatures regarding marijuana.

We need not, however, decide whether the state is correct in its position that a substance has an accepted medical use in treatment and accepted safety for use in treatment within the meaning of sec. 161.13(2), Stats., only if FDA has approved a new drug application. Whether or not the state is correct, defendant has not established an accepted medical use on this record. The pharmacist/pharmacologist witness who testified on his behalf agreed that disputes exist among doctors and pharmacists concerning THC's acceptance for medical use. Indeed, defendant concedes in his brief that the debate continues in the scientific community regarding the effects of marijuana.

The dispute destroys the factual basis for defendant's claim that inclusion of THC in Schedule I is irrational. It is rational for the legislature to classify THC in Schedule I as long as THC's acceptance for medical use is an unsettled medical question.

Other courts have reached the same conclusion. Indeed, as far as we can determine, no federal or state court has found that such a classification violates equal protection or due process guarantees. *See United States v. Fogarty,* 692 F.2d 542 (8th Cir. 1982), *cert. denied,* 460 U.S. 1040 (1983); *United States v. Middleton,* 690 F.2d 820 (11th Cir. 1982), *cert. denied,* 460 U.S. 1051 (1983); *United States v. Miroyan,* 577 F.2d 489 (9th Cir.), *cert. denied,* 439 U.S. 896 (1978); *United States v. Kiffer,* 477 F.2d 349 (2d Cir.), *cert. denied,* 414 U.S. 831 (1973); *Wolkind v. Selph,* 495 F. Supp. 507 (E.D. Va. 1980), *aff'd,* 649 F.2d 865 (4th

Cir. 1981); *Nat. Org. for Reform of Marijuana Laws v. Bell,* 488 F. Supp. 123 (D.D.C. 1980); *United States v. Bergdell,* 412 F. Supp. 1308 (D. Del. 1976); *Isbell v. State,* 428 So.2d 215 (Ct.App. Ala. 1983); *Hamilton v. State,* 366 So.2d 8 (Fla. 1979); *State v. O'Bryan,* 531 P.2d 1193 (Idaho 1975); *Ross v. State,* 360 N.E.2d 1015 (Ct.App. Ind. 1977); *State v. Leins,* 234 N.W.2d 645 (Iowa 1975); *People v. Schmidt,* 272 N.W.2d 732 (Ct.App. Mich. 1978); *State v. Hanson,* 364 N.W.2d 786 (Minn. 1985); *State v. Mitchell,* 563 S.W.2d 18 (Mo. 1978) (en banc); *State v. Stallman,* 673 S.W.2d 857 (Ct.App. Mo. 1984); *State v. Ennis,* 334 N.W.2d 827 (N.D.), *cert. denied,* — U.S. —, 104 S Ct. 484 (1983); *State v. Strong,* 245 N.W.2d 277 (S.D. 1976); *State v. Whitney,* 637 P2d 956 (Wash. 1981) (en banc).

In *United States v. Fogarty, supra,* defendant claimed that classifying marijuana as a Schedule I controlled substance in the Federal Controlled Substances Act is irrational and arbitrary. He contended that marijuana has currently accepted medical uses, including therapeutic uses in the treatment of glaucoma and cancer, and therefore it had a currently accepted medical use. The court said that "the ongoing vigorous dispute as to the physical and psychological effects of marijuana, its potential for abuse, and whether it has any medical value, supports the rationality of the continued Schedule I classification." 692 F.2d at 547–48. *United States v. Kiffer,* concluded, in part, that "[i]n view of . . . the ongoing dispute regarding the potential effects of marihuana, we cannot say that its placement in Schedule I is so arbitrary or unreasonable as to render it unconstitutional." 477 F.2d at 356–57.

State appellate courts have reached similar results. In *People v. Schmidt, supra,* the Michigan Court of Appeals noted that defendant had presented expert testimony to support his claim that because marijuana is relatively harmless, the legislature acted arbitrarily in placing it in Schedule I. The *Schmidt* court said,

> The testimony in this case below would not be sufficient to declare the statute unconstitutional. Defendant's witnesses recognized the split in medical opinion and expressed the belief that much is still to be learned in this area. Divided scientific opinion is not a firm enough basis upon which to declare a statute unconstitutional.

272 N.W.2d at 734–35. The *Schmidt* court also noted appellate decisions in other states holding that because no uniform scientific opinion exists regarding marijuana, the legislative bodies in those states did not act arbitrarily in deciding to control marijuana. *Id.* at 735.

More recently, the supreme court of North Dakota concluded in *State v. Ennis,* "[a]ccordingly, because the issue of whether or not marijuana is properly classified as a Schedule I drug is fairly debatable, we will not usurp the legislature's factfinding function." 334 N.W.2d at 835. The *Ennis* court concluded that it could not reasonably be said that classifying marijuana as a Schedule I drug bears no rational relationship to the legitimate state interest of controlling drug abuse. *Id.* at 836.

We close this discussion with noting that defendant cites no decision by a court of last resort in the United States holding that the classification of marijuana or THC as a Schedule I substance in the Uniform Controlled Substances Act is irrational and therefore violates equal protection.

8. *Penalties*

We reject Olson's assertion that he has been denied equal protection because THC dealers and dealers of drugs such as heroin are subject to the same criminal sanctions. The penalties differ considerably for delivery of heroin and delivery of THC or marijuana.

Heroin is an opium derivative and is a "narcotic drug." Secs. 161.01(15)(a) and 161.14(3)(k), Stats. A person

427

who unlawfully manufactures or delivers a Schedule I narcotic drug may be fined not more than $25,000 or imprisoned not more than 15 years or both. Section 161.41(1)(a), Stats. THC is a Schedule I drug but is not a narcotic drug. Secs. 161.01(15) and 161.14(4)(t), Stats. The maximum penalty for manufacture or delivery of marijuana is five years in prison and a $15,000 fine. Sec. 161.41(1)(b), Stats. This penalty applies to all nonnarcotic Schedule I and Schedule II controlled substances and to all Schedule III controlled substances.

### B. *Sentencing*

The trial court sentenced Olson to three years probation on a withheld sentence, 200 hours of community service and 60 days in jail as a condition of probation. Olson asserts that the court imposed jail time because he refused to name his supplier. A trial court may not penalize a defendant for exercising his right against self-incrimination, even after a jury's determination of guilt. *Scales v. State,* 64 Wis.2d 485, 496–97, 219 N.W.2d 286, 293 (1974). Olson contends that if a trial court attempts to force a defendant who claims innocence to name his supplier of illegal drugs, the defendant faces an impermissible constitutional dilemma. Failure to name the supplier results in a heavier sentence, but naming the supplier admits the crime.

The claimed constitutional dilemma does not exist. At the sentencing hearing, Olson admitted that he had obtained his marijuana from a friend. He incriminated himself before he was asked to identify his supplier.

We reject the contention that his refusal to name his supplier was an improper factor in his sentencing. The sentencing court may consider a defendant's remorse, repentance and cooperativeness. *Holmes v. State,* 76 Wis.2d 259, 275, 251 N.W.2d 56, 64 (1977). A defendant's refusal to name accomplices after admitting the crime is some ev-

idence of a lack of cooperativeness. *Id.* at 276, 251 N.W.2d at 64. We see no difference between a refusal to name accomplices and a refusal to name a drug supplier. That the supplier was a friend does not affect the question. The trial court properly took into account defendant's refusal to name his supplier.

Because the trial court did not rely on an impermissible sentencing factor, no abuse of discretion occurred when imposing 60 days jail time as a condition to Olson's probation.

*By the Court.*—Judgment affirmed.