STATE of Wisconsin, Plaintiff-Respondent,

v.

Matthew C. SKAMFER, Defendant-Appellant.†

Court of Appeals

*No. 92–1932–CR. Submitted on briefs March 29, 1993.—Decided April 14, 1993.*

(Also reported in 500 N.W.2d 369.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Morris D. Berman* of *Giesen & Berman, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Sally L. Wellman*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J. The principal issue on appeal is whether Matthew C. Skamfer's commitment to a mental institution upon a finding of not guilty by reason of mental disease or defect rendered him a "prisoner" within the meaning of the battery by prisoners statute, sec. 940.20(1), Stats. We hold it did.

Skamfer also asserts that the trial court committed statutory and constitutional error by refusing to appoint a psychiatrist on his behalf following his plea of not guilty by reason of mental disease or defect. We reject the statutory component of this argument on the basis of existing case law. We deem the constitutional argument waived. Last, Skamfer contends that his confinement at the mental institution when he committed the battery was unlawful pursuant to *Foucha v. Louisiana*, 504 U.S. —, 112 S. Ct. 1780 (1992). We also deem this argument waived.

The facts are undisputed. In a prior criminal proceeding, Skamfer was found not guilty by reason of mental disease or defect and was committed to the Department of Health and Social Services. Pursuant to this commitment, Skamfer was institutionalized at the Mendota Mental Health Institute.

While at Mendota, Skamfer committed a battery against a staff member. As a result, the state charged him with battery by a prisoner pursuant to sec. 940.20(1), Stats. The statute provides:

> *Battery: special circumstances.* (1) BATTERY BY PRISONERS. Any prisoner confined to a state prison or other state, county or municipal detention facility who intentionally causes bodily harm to an officer, employe, visitor or another inmate of such prison or institution, without his or her consent, is guilty of a Class D felony.

Skamfer moved to dismiss the complaint, arguing that he was not a prisoner at the time of the alleged offense because he was then under the commitment based upon the prior nonresponsibility finding pursuant to sec. 971.17, Stats. The trial court rejected Skamfer's argument. Skamfer then entered a plea of not guilty and a special plea of not guilty by reason of mental disease or defect. Later, Skamfer withdrew his special plea and stood only on his not guilty plea. A jury found Skamfer guilty. Skamfer appeals from the ensuing judgment of conviction.

The appellate issue requires that we interpret sec. 940.20(1), Stats. The interpretation of a statute and its application to a set of undisputed facts are questions of law which we review *de novo. State v. Rohl,* 160 Wis. 2d 325, 329, 466 N.W.2d 208, 210 (Ct. App. 1991). We first look to the statute's language and apply the ordinary and accepted meaning of the words without resort to rules of statutory construction. *In re A.E.,* 163 Wis. 2d 270, 274–75, 471 N.W.2d 519, 521 (Ct. App. 1991). We may resort to a recognized dictionary to determine the

ordinary meaning of a word. *Id.* at 275, 471 N.W.2d at 521.

"Prisoner" is defined as a person "involuntarily restrained" or "held under arrest or in prison." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1804 (unabr. 1976). The case law has adopted the essence of this dictionary definition. In *State v. Brill*, 1 Wis. 2d 288, 83 N.W.2d 721 (1957), the Wisconsin Supreme Court defined prisoner as "[o]ne who is deprived of his liberty; one who is against his will kept in confinement or custody." *Id.* at 291, 83 N.W.2d at 723 (quoting BLACK'S LAW DICTIONARY 1358 (4th ed. 1968)). In addition, such confinement or custody must be the result of a violation of the law. *In re C.D.M.*, 125 Wis. 2d 170, 172, 370 N.W.2d 287, 288-89 (Ct. App. 1985).

Skamfer's commitment at Mendota satisfies both the dictionary and the legal definition of "prisoner." Skamfer was clearly deprived of his liberty under an involuntary confinement in a criminal law context. And, although Skamfer was ultimately found not guilty by reason of mental disease or defect in the prior proceeding, such a finding cannot be made unless the defendant is first determined to have violated the law. *See generally* sec. 971.165(1)(d), Stats. (if the defendant is found not guilty, the court shall enter a judgment of acquittal and discharge the defendant).

In addition to its definition of "prisoner," *C.D.M.* also supports our conclusion on its facts and law. There, a juvenile was committed to the Lincoln Hills School pursuant to a juvenile court disposition. While at Lincoln Hills School, the juvenile committed a battery against a school employee. The juvenile argued that his juvenile commitment did not render him a prisoner under the battery by a prisoner statute.

308

The court of appeals rejected this argument. Applying the *Brill* definition of prisoner, the court held that the juvenile's liberty was obviously curtailed. *C.D.M.*, 125 Wis. 2d. at 173, 370 N.W.2d at 289. And, applying its own added requirement that the restraint of liberty must flow from a violation of the law, the *C.D.M.* court further concluded that, although the juvenile was not sentenced as a criminal offender, the juvenile commitment had to be premised upon a criminal violation. *Id.*

Skamfer's situation is no different. As we have already noted, Skamfer's confinement at Mendota was: (1) a restraint of his liberty, and (2) premised upon a prior finding that he had violated the criminal law.

Skamfer next argues a variation on the same theme. He contends that his commitment was the result of a civil proceeding. In support, he cites to the case law that has applied certain aspects of civil procedure to the responsibility phase of a criminal proceeding. *See, e.g., State v. Koput*, 142 Wis. 2d 370, 418 N.W.2d 804 (1988). This argument misreads the *Koput* line of cases. Those cases do not change the inherent nature of the proceeding from criminal to civil. Rather, those cases simply apply certain aspects of civil procedure to the responsibility phase of the criminal proceeding.

The mental responsibility phase does not exist in a vacuum; rather, it is a derivative of the criminal proceeding when the defendant puts mental responsibility in issue. As such, the responsibility phase is inextricably tied to the underlying criminal prosecution. Thus,

309

Skamfer's commitment was the product of a criminal proceeding.[1]

## APPOINTMENT OF A PSYCHIATRIST

Following his special plea, Skamfer asked that the trial court appoint a psychiatrist to evaluate his mental condition at the time of the battery. The trial court denied the motion. Skamfer contends that this ruling violated his statutory and constitutional right to the appointment of a psychiatrist.

As to the statutory claim, Skamfer recognizes that in *State v. Burdick*, 166 Wis. 2d 785, 480 N.W.2d 528 (Ct. App. 1992), the court of appeals held that a defendant does not have an absolute statutory right to the appointment of a psychiatrist. *Id.* at 788, 480 N.W.2d at 529. Skamfer raises this issue only to preserve it for possible review by the Wisconsin Supreme Court. Therefore, we do not further discuss this argument.

---

[1] In another variation, Skamfer also argues that his confinement did not result from criminal charges. He bases this argument on the Wisconsin Criminal Jury Instructions Committee's comments to the jury instruction pertaining to the battery by prisoners statute. The comment states: "The Committee concluded that the statute may be applied to persons confined in mental health institutes provided their confinement *is a result of criminal charges.*" Wis J I—Criminal 1222 n.2 (emphasis added). This requirement is functionally the same as the *C.D.M.* requirement that the confinement must be based upon a violation of the criminal law. *In re C.D.M.*, 125 Wis. 2d 170, 173, 370 N.W.2d 287, 289 (Ct. App. 1985). Since we have already concluded that under *C.D.M.* Skamfer's confinement in the prior case was based upon a violation of the criminal law, we have answered Skamfer's argument under the jury instruction comment.

As to the constitutional claim, Skamfer relies on *Ake v. Oklahoma*, 470 U.S. 68 (1985), which holds that an indigent defendant has a constitutional due process right to the appointment of a psychiatrist at state expense where the defendant puts his mental status at the time of the offense in issue. *Id.* at 83.

The state argues that Skamfer has waived this issue for two reasons: (1) Skamfer did not raise any constitutional claim in the trial court, and (2) Skamfer later withdrew his special plea and proceeded to trial only on his not guilty plea. We agree that the issue is waived.

■

Skamfer concedes that he did not raise the constitutional argument in the trial court. Nonetheless, he contends that we should, in our discretion, address the constitutional issue. We may do so where the interests of justice require and where there are no factual issues which require resolution. *Maclin v. State*, 92 Wis. 2d 323, 329, 284 N.W.2d 661, 664 (1979).

■

Here, however, we are not satisfied that interests of justice require us to address the issue. Skamfer abandoned his responsibility defense when he withdrew his special plea. This action was akin to the withdrawal of a not guilty plea and entry of a guilty or no contest plea. A guilty or no contest plea waives all defects and defenses, even those of constitutional dimension. *State v. Olson*, 127 Wis. 2d 412, 418, 380 N.W.2d 375, 378 (Ct. App. 1985). The law recognizes two exceptions to this waiver rule: jurisdictional defenses and those preserved by statute. *Id.* at 419, 380 N.W.2d at 378-79. *See also* sec. 971.31(10), Stats. Thus, a defendant who pleads guilty will not be heard to complain about a trial court's refusal to appoint an

expert to assist in the defense because such ruling does not raise jurisdictional concerns and is not otherwise preserved by statute.

The rule should be no different where a defendant abandons a special plea of not guilty by reason of mental disease or defect. Such withdrawal abandons all defenses premised upon nonresponsibility. Such action is a tacit admission that the defendant accepts mental responsibility for the charged act and chooses to defend on other available grounds. As with a guilty or no contest plea, we hold that the withdrawal of a special plea waives all defenses and defects related to such a special proceeding except those relating to jurisdiction or preserved by statute.[2] Skamfer's appellate issue does not qualify under either exception.

A further ground for invoking waiver in this case is the potential need for fact-finding. *Maclin*, 92 Wis. 2d at 329, 284 N.W.2d at 664. While the United States Supreme Court in *Ake* set out the constitutional duty of

---

[2] We note that Skamfer advised the trial court when he withdrew his special plea that he was doing so primarily because the court had refused to appoint a psychiatrist. Although Skamfer does not make this argument, he may have believed that he was preserving the issue for appeal.

However, as we have explained, a guilty plea waives *all* defenses or defects, even those which a defendant attempts to preserve for appeal. In *State v. Riekkoff*, 112 Wis. 2d 119, 332 N.W.2d 744 (1983), the supreme court held that the guilty-plea-waiver rule applies even where the defendant expressly states an intent not to waive certain issues on appeal and makes that intention a condition of the plea and the state and judge acquiesce in that intention. *Id.* at 127-28, 332 N.W.2d at 749. In short, where a defendant pleads guilty, the law—not the defendant—sets the perimeters of appellate review.

the state to provide a psychiatrist or physician to an indigent defendant where the defendant's mental status is put in issue, the Court did not advise how the states were to implement this constitutional obligation. In fact, *Ake* expressly left this decision to the individual states. *Ake*, 470 U.S. at 83.

Here, we do not know the precise reason why the state public defender's office (or any other appropriate state agency) did not provide Skamfer a psychiatrist or fund the cost of such an expert.[3] All we know from the present record is that the court refused to appoint a psychiatrist. But this fact, standing alone, does not establish an *Ake* violation. We lack the hard factual material necessary for us to answer whether the state has violated Skamfer's constitutional rights under *Ake*.[4] Given these circumstances, we cannot conduct a meaningful review of Skamfer's constitutional complaint. We therefore decline to address the issue.

## *FOUCHA V. LOUISIANA*

As his final issue, Skamfer argues that his confinement at Mendota was unlawful pursuant to *Foucha v. Louisiana*, 504 U.S. —, 112 S. Ct. 1780 (1992). Thus, he reasons that he could not be charged with battery by a prisoner.

*Foucha* holds that it is a due process violation for a state to indefinitely detain an insanity acquittee who is not mentally ill but who did not prove that he would not be dangerous to others. *Id*. at —, 112 S. Ct. at 1787.

This issue is clearly waived because Skamfer never raised this issue in the trial court. As with the

---

[3] A dialogue between the trial court and counsel suggests that fiscal considerations may have been the reason.

[4] This is understandable since Skamfer never asserted an *Ake* violation. *See Ake v. Oklahoma*, 470 U.S. 68 (1985).

preceding issue, Skamfer's omission leaves his claim in a factual vacuum. In order for Skamfer to prevail under *Foucha*, he must show that he is no longer mentally ill. Nothing in this record supports that claim because the issue was never raised in the trial court. We decline to review this issue.

*By the Court.*—Judgment affirmed.