STATE of Wisconsin, Plaintiff-Respondent,

v.

Turnel W. SMITH, Defendant-Appellant. [Case No. 97–0266–CR]†

STATE of Wisconsin, Plaintiff-Respondent,

v.

Bruce D. DYBDAL, Defendant-Appellant. [Case No. 97–1038–CR]†

Court of Appeals

*Nos. 97–0266–CR, 97–1038–CR. Submitted on briefs August 21, 1997.—Decided October 29, 1997.*

(Also reported in 571 N.W.2d 472.)

On behalf of defendant-appellant Turnel W. Smith, the cause was submitted on the brief of *Jack E. Schairer*, first assistant state public defender. On behalf of defendant-appellant Bruce D. Dybdal, the cause was submitted on the brief of *Bryan J. Borman*, assistant state public defender. There was a reply brief filed on behalf of defendant-appellant Turnel W. Smith and defendant-appellant Bruce D. Dybdal by *Jack E. Schairer* and *Bryan J. Borman*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul E. Bucher,* district attorney.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.  In separate incidents, Bruce D. Dybdal and Turnel W. Smith failed to return to the county jail after being temporarily released on Huber privileges. They both contend that while they can be prosecuted for escape from jail if they are in the actual custody of the jail, they cannot be prosecuted for escape

while on work release. They reason that the escape statute only sanctions "prisoners" who abscond while on work release and the definition of a prisoner does not extend to individuals who are jailed for nonpayment of a municipal forfeiture. We disagree and hold that because a municipal ordinance is a law, because Dybdal and Smith violated the law, and because those who are incarcerated for violating the law are prisoners, Dybdal and Smith are prisoners under the escape statute. We affirm.

The facts are undisputed. Dybdal and Smith were placed in the county jail after failing to pay a forfeiture following their convictions for noncriminal municipal violations.[1] While jailed, they were granted Huber work release privileges. Neither Dybdal nor Smith returned to the county jail after being temporarily released for work. They both were subsequently apprehended and convicted of misdemeanor escape contrary to § 946.42(2), STATS. We consolidated their cases on appeal.

Resolution of the issue requires an interpretation of our escape statute, § 946.42, STATS. Statutory interpretation presents a question of law which we review de novo. *See State v. Michels,* 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987).

We begin by noting that in order to be convicted of escape under § 946.42, STATS., Dybdal and Smith had to be in the custody of the State when they escaped. *See* § 946.42(2). Both Dybdal and Smith concede that had they escaped from the county jail while in actual cus-

---

[1] Dybdal was convicted of obstructing an officer. Smith was convicted of operating a vehicle with a suspended driver's license.

tody of the jail, they would be subject to the escape statute. Section 946.42(2)(a) states:

> A person in custody who intentionally escapes from custody under any of the following circumstances is guilty of a Class A misdemeanor:
>     (a)   Pursuant to a legal arrest for or lawfully charged with or convicted of a violation of a statutory traffic regulation, a statutory offense for which the penalty is forfeiture or a municipal ordinance.

Dybdal and Smith note, however, that they were not actually in custody; they were outside the county jail on work release. They observe that those who are on work release are deemed under the law to be in the "constructive custody" of the State. They assert, however, that the statute speaks only to "prisoners" as being under the constructive custody of the State and claim that they are not prisoners.

Section 946.42(1)(a), Stats., defines custody to include "constructive custody of *prisoners* . . . temporarily outside the institution whether for the purpose of work . . . or otherwise." (Emphasis added.) In *State v. Brill,* 1 Wis. 2d 288, 83 N.W.2d 721 (1957), our supreme court defined prisoner as " '[o]ne who is deprived of his liberty; one who is against his will kept in confinement or custody.' " *Id.* at 291, 83 N.W.2d at 723 (quoted source omitted). The deprivation of liberty must occur as a result of a violation of the law. *See C.D.M. v. State,* 125 Wis. 2d 170, 172, 370 N.W.2d 287, 288–89 (Ct. App. 1985); *see also State v. Skamfer,* 176 Wis. 2d 304, 308, 500 N.W.2d 369, 371 (Ct. App. 1993).

There is no question that Dybdal's and Smith's incarcerations deprived them of their liberty. But Dybdal and Smith contend that under *C.D.M.* and *Skamfer,* the deprivation of liberty must be the

result—not just of the law, but of the *criminal* law—in order to meet the definition of a prisoner. They argue that they are not prisoners because they did not violate a criminal law. They are wrong.

[2]

Dybdal and Smith are prisoners because their deprivation of liberty is premised upon a violation of the law. *See C.D.M.*, 125 Wis. 2d at 172, 370 N.W.2d at 288–89; *Skamfer*, 176 Wis. 2d at 308, 500 N.W.2d at 371. When we wrote *C.D.M.*, we quoted with approval a California appellate case defining a prisoner as a "person confined under authority of law and pursuant to a penological *or correctional objective." C.D.M.*, 125 Wis. 2d at 172, 370 N.W.2d at 289 (emphasis added). We considered our statutes to define prisoner as a person "who has been confined as a means of enforcing the law." *Id.* A municipal ordinance is a law and Dybdal and Smith violated the law. Their incarceration resulted from failing to pay the forfeitures ensuing therefrom. Their incarceration fulfilled a correctional objective which was to sanction them for the action they took in failing to pay their fines. It has the added benefit of teaching them not to disregard payment of municipal forfeitures.

Dybdal and Smith rely upon language in the *C.D.M.* and *Skamfer* cases to support their argument that the deprivation of liberty must be for a violation of the criminal law. But the language must be read in the context of those cases. In *C.D.M.,* we noted that one of the reasons why a juvenile committed to Lincoln Hills School pursuant to a delinquency adjudication was a prisoner was because he had been adjudicated delinquent. *See C.D.M.*, 125 Wis. 2d at 173, 370 N.W.2d at 289. We observed that before a juvenile can be confined at Lincoln Hills, "a child must commit a criminal viola-

tion that would be punishable for an adult by a sentence of at least six months." *Id.* We said nothing that could be construed to mean that confinement in the general sense must result from a violation of the criminal law. We were only commenting about *how* juvenile delinquency is found.

Likewise, in *Skamfer* we held that a defendant committed to a mental health institution after being adjudicated not guilty by reason of mental disease or defect was a prisoner. *See Skamfer*, 176 Wis. 2d at 308, 500 N.W.2d at 371. Skamfer's involuntary confinement was clearly a deprivation of liberty and although the commitment resulted from a finding of not guilty by reason of mental disease or defect, the finding could not have been made without first determining that he violated the law. *See id.* The language that Dybdal and Smith rely on in *Skamfer* for the proposition that the deprivation of liberty must result from a violation of the criminal law was irrelevant to the ratio decidendi of the case; we were merely distinguishing Skamfer's confinement from those persons confined as a result of a civil proceeding. We noted that Skamfer's confinement was premised upon a prior finding that he had violated a criminal law, whereas there is no such prerequisite for those confined as a result of a civil proceeding. *See id.* at 309, 500 N.W.2d at 371.

We note how § 946.42(2)(a), STATS., provides that custody for purposes of the escape statute includes an arrest for a violation of a municipal ordinance. It would be incongruous for us to say, had we adopted Dybdal's and Smith's definition of a prisoner, that they could be charged with escape upon flight from the custody of the officer after arrest, but could not be charged with escape while on work release after conviction and incarceration in the county jail for failure to pay a

forfeiture. Further, as a matter of common sense, we do not understand how a person legally incarcerated for the nonpayment of a municipal forfeiture can leave work release with no risk of a sanction. Certainly, such a situation could not have been intended by our legislature. We must construe our statutes so as to avoid absurd results. *See State v. Mendoza,* 96 Wis. 2d 106, 115, 291 N.W.2d 478, 483 (1980). Allowing persons in Dybdal's and Smith's position to roam if placed on Huber release would be contrary to the purposes of our Huber Law and would force authorities to refrain from authorizing work release for persons incarcerated because they failed to pay a forfeiture. That would be an absurd result.

Finally, we note that § 800.095(4)(b)1, STATS., says that when a defendant convicted of a forfeiture fails to pay a fine, the defendant shall be "imprisoned." That is pretty telling language to us. The same holds true for § 303.08, STATS., dealing with the Huber Law. This statute uses the term "prisoner" when referring to a person convicted of a municipal offense. *See, e.g.,* § 303.08(7)(a) ("If the prisoner was convicted in municipal court . . . ."). We also point out the title of § 303.18, STATS., which includes the wording "Commitments; municipal prisoners . . . ." We are convinced that the legislature meant to include those persons incarcerated due to nonpayment of a forfeiture as being subject to a misdemeanor escape charge if they abscond from work release.

*By the Court.*—Judgments affirmed.