STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher A. KACZYNSKI, Defendant-Appellant.†

Court of Appeals

*No. 02–0025–CR. Submitted on briefs October 1, 2002.—Decided October 22, 2002.*

2002 WI App 276

(Also reported in 654 N.W.2d 300.)

† Petition to review denied 2-19-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eugene L. Kaluzny* of *Kaluzny Law Offices, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Christopher G. Wren*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Christopher A. Kaczynski appeals from a judgment entered on his guilty plea convicting him of robbery, and from the trial court's order denying his motion for postconviction relief. He asserts two claims of alleged trial-court error. First, he contends that the trial court unlawfully punished him because he refused to reveal the identity of his accomplice. Second, he argues that the trial court's sentence was unduly harsh. We affirm.

## I.

¶ 2. In November of 1995, Kaczynski and an accomplice robbed a liquor store in West Allis. The accomplice was armed and pistol whipped the store's owner. Kaczynski took the money. Both Kaczynski and his armed accomplice were masked. In late 2000, the State charged Kaczynski with masked and armed robbery by threat of force as party to a crime, *see* WIS. STAT. §§ 943.32(1)(b) & (2) (1995–96), 939.641 (1995–96), and 939.05 (1995–96). The maximum possible imprisonment was forty-five years. *See* WIS. STAT. §§ 939.50(3)(b) (1995–96) and 939.641 (1995–96). The case was plea-

bargained, and the trial court permitted the State to amend the charge to robbery, *see* WIS. STAT. § 943.32(1) (1995–96), with a maximum possible imprisonment of ten years, *see* 939.50(3)(c) (1995–96). The State explained to the trial court at the plea hearing that the case was charged late because the State crime laboratory had initially erroneously failed to match Kaczynski's fingerprints with those found at the crime scene. The State also explained to the trial court that under the plea bargain it was going to recommend that Kaczynski be sentenced to prison for between seven and eight years.

¶ 3. Kaczynski's accomplice was never identified, and at the plea hearing the trial court asked Kaczynski to reveal who he was. Kaczynski refused, claiming that he was afraid:

> Your Honor, the reason that I don't want to indulge [*sic*] the information who this person is is because ultimately what I'm doing here is pleading guilty and allowing you to sentence me. This person is in prison, and this person I will have to do time with; and this person has friends in prison. And I'm fearful that if I were to, at this point in time, give you that information, I'd be labeled a snitch going into the prison system. That would be something I'd have to try to survive for the next five to ten years, depending on your sentence.

> That is my only reason for not giving you this information. I can tell you that this person is never going to be out in society never again. He has absolutely nothing to lose by taking me out from there if I'm a snitch.

Earlier in the plea hearing, when Kaczynski's lawyer explained essentially the same fears, the trial court opined that it doubted their veracity and validity:

> My concern here is that it's easy for Mr. Kaczynski or anyone to come in and tell me that they might be threatened by their co-actor and then protect the identity of the co-actor. And while they might be fearful of some realistic retaliation, they might also be loyal to the death and lying to me about the identity of the co-actor.

> So there are two ways to look at it. Mr. Kaczynski tells me he's worried about retaliation, but he might also be a loyal soldier who is not about to turn on his friend. So I have to decide whether he's accepting responsibility for his crime at sentencing.

> . . . .

> And it might be that the co-actor is living the life of Riley right now over in a high-rise condominium on Prospect Avenue confident that his friend in crime isn't going to turn on him.

After this and related colloquy, the trial court told Kaczynski that unless he revealed the accomplice's identity at the sentencing hearing it "would impose additional punishment beyond what I would impose for his participation, given all the other circumstances of his case."

¶ 4. At the sentencing hearing, the trial court reiterated its view that helping law enforcement to bring accomplices to book was an important sentencing factor. Relying on *Roberts v. United States*, 445 U.S. 552 (1980), the trial court noted that when a defendant does not cooperate, he or she "reject[s] an obligation of community life that should be recognized before reha- bilitation can begin," and opined that "if Mr. Kaczynski is unable to disclose the identity of his coactor who by all accounts is a mean, vicious person, that Mr. Kaczyn- ski himself continues to be at war with his society."

¶ 5.   According to Kaczynski's presentence report, he had a lengthy criminal record, including as a juvenile:

- first degree sexual assault,

- burglary,

- theft as party to a crime,

and including as an adult:

- forgery,

- resisting or obstructing an officer,

- theft,

- two separate instances of receiving stolen property,

- burglary as party to a crime, and

- battery.

Additionally, at the time of sentencing, Kaczynski had a pending battery-by-a-prisoner charge and also an armed-robbery-with-threat-of-force case in Washington County. In connection with the armed-robbery charge, Kaczynski told the presentence-report writer that he merely had innocently picked up a friend who, unbeknownst to Kaczynski, had just robbed a bank.

¶ 6.   During his allocution, Kaczynski told the trial court that "what I did in November of '95 is wrong," and that he had allowed his "drug addiction to have mastery of my good judgment." He said that he was "recovering from my drug addiction" and had "spent the last few years of my life toward becoming a contributing member of society." He asked the trial court for "mercy

and forgiveness" and hoped that the trial court would "recognize[] my remorse, as well as my sincere desire to change and become a productive member of society in the future." He refused, however, to name his accomplice, and discounted the trial court's earlier assurance that the prison authorities could protect him.

¶ 7.. The trial court sentenced Kaczynski to the maximum period of incarceration for the reduced charge, ten years, which, as noted, was less than one-quarter of Kaczynski's exposure on the charge that most accurately described his conduct: masked armed robbery as party to a crime. The following are the pertinent excerpts from the trial court's sentencing rationale:

> The thing that jumps out at me looking at your criminal record is that after you were released from custody in late 1995 you participated in this robbery at the liquor store in West Allis on November 22nd, 1995, and then you were arrested on two other armed and masked robberies which occurred on December 8th, 1995, December 13th, 1995. Those charges that are reflected on Page 7 of the presentence report were dismissed. I'm entitled to consider conduct even if it was dismissed.

> In the year 2000, you're now facing a charge of participating in the armed robbery of the savings institution in Washington County.

The trial court credited Kaczynski's intelligence, but noted that he has a "history of violence and armed robberies," pointing out that Kaczynski's sexual-assault conviction as a juvenile was "against your six year-old brother when you were twelve" and that that was a "forebearer [sic] of things to come for you as an adult." After recounting the horrific ordeal suffered by the liquor-store armed-robbery victims, the trial court

continued: "Your robbery of the liquor store was an intentional act motivated by greed and accomplished by violence and use of a firearm so that you could acquire money to feed your cocaine habit."

¶ 8. The trial court also reflected that Kaczynski's "history of armed robberies indicates . . . that there is a need to protect the community from future aggressive acts," rejecting Kaczynski's suggestion that he had "turned a new life since 1996," by not using drugs. The trial court then turned to Kaczynski's refusal to name his accomplice:

> I am going to increase the punishment that I would have otherwise ordered because of my conclusion that you are at war with your society in your refusal to name your accomplice in this robbery. I'm relying on the rational ˙[*sic*] of Roberts against United States from 1980, from [*sic*] my decision, to increase the punishment.

## II.

A. *Kaczynski's refusal to name his accomplice.*

██

¶ 9. It has long been the law in Wisconsin that, unless a defendant's rights against self-incrimination are implicated (and Kaczynski makes no claim that they are), it is "entirely proper" for a trial court "to consider on sentencing, the defendant's cooperativeness as manifested by his refusal to name his accomplices." *Holmes v. State*, 76 Wis. 2d 259, 276, 251 N.W.2d 56, 64 (1977). *See also State v. Olson*, 127 Wis. 2d 412, 428–429, 380 N.W.2d 375, 383 (Ct. App. 1985) (refusal to name marijuana supplier). *Roberts*, upon which the trial court relied, also recognized that a defendant's refusal to cooperate with law enforcement is an appropriate sentencing consideration:

It hardly could be otherwise. Concealment of crime has been condemned throughout our history. The citizen's duty to "raise the 'hue and cry' and report felonies to the authorities," was an established tenet of Anglo-Saxon law at least as early as the 13th century. The first Congress of the United States enacted a statute imposing criminal penalties upon anyone who, "having knowledge of the actual commission of [certain felonies,] shall conceal, and not as soon as may be disclose and make known the same to [the appropriate] authority . . . ." Although the term "misprision of felony" now has an archaic ring, gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship.

*Id.*, 445 U.S. at 557–558 (citations, quoted sources, and footnote omitted).

■

¶ 10.    The defendant in *Roberts*, as does Kaczynski here, claimed that he refused to cooperate because he had, in the words of *Roberts*, "legitimate fears of physical retaliation." *Id.*, 445 U.S. at 559. *Roberts* noted, and this is what Kaczynski hangs his hat on:

These arguments would have merited serious consideration if they had been presented properly to the sentencing judge. But the mere possibility of unarticulated explanations or excuses for antisocial conduct does not make that conduct irrelevant to the sentencing decision. The District Court had no opportunity to consider the theories that petitioner now advances, for each was raised for the first time in petitioner's appellate brief. Although petitioner knew that his intransigency would be used against him, neither he nor his lawyer offered any explanation to the sentencing court. Even after the prosecutor observed that the failure to cooperate could be viewed as evidence of continuing criminal intent, petitioner remained silent.

*Ibid.* Here, of course, unlike *Roberts* and, apparently, both *Holmes* and *Olson*, where it does not appear that "fear of retaliation" was ever raised, Kaczynski presented his fears of retaliation to the trial court. As we have seen, the trial court considered what Kaczynski and his lawyer offered, but, as revealed by its comments quoted above, doubted Kaczynski's veracity and also believed that stronger social values prevailed.

¶ 11. It is true, as Kaczynski asserts on this appeal, that prisons are dangerous places and, all too often, those in charge of prisoner safety are unable to ensure that prisoners will not be preyed upon, attacked, or even murdered by those with whom they are incarcerated. That danger also applies to not only the general prison population but also to certain classes of prisoners who come into prison with special stigma—child molesters, for example. *See* James E. Robertson, *The Constitution in Protective Custody: An Analysis of the Rights of Protective Custody Inmates,* 56 U. Cin. L. Rev. 91, 98–99 (1987). But just as child molesters who deserve prison should not get a pass from incarceration because they may be at special risk inside the institution, we cannot, as Kaczynski urges, decree that it is an erroneous exercise of sentencing discretion for a trial court to enhance a sentence when a defendant's refusal to cooperate is based on his or her incantation of a fear of retaliation—even when that fear might be justified. To do so, would be to enact the "Tony Soprano" "code of silence" into the substantive law of this state. This we refuse to do.[1]

---

[1] Kaczynski argues that we should follow federal sentencing guideline U.S.S.G § 5K1.2, which provides that a "defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." First, of course, we are not bound by a sentencing rubric

¶ 12. We are in no position to second-guess the trial court's assessment of Kaczynski's sincerity. *See State v. Baudhuin*, 141 Wis. 2d 642, 647, 416 N.W.2d 60, 62 (1987) (trial court decides credibility of witnesses and weight given to what they say). Moreover, as summarized below, a sentencing court's evaluation of the various sentencing considerations is vested in the trial court's discretion. We cannot say that the trial court erroneously exercised its discretion in considering Kaczynski's refusal to name his armed and masked accomplice.

B. *Alleged harshness of Kaczynski's sentence.*

■■■■

¶ 13. Sentencing is vested in the trial court's discretion, and a defendant who challenges a sentence has the burden to show that it was unreasonable; it is presumed that the trial court acted reasonably. *State v. Lechner*, 217 Wis. 2d 392, 418, 576 N.W.2d 912, 925 (1998). The primary factors considered in imposing sentence are the gravity of the offense, the character of the offender, and the need for the public's protection.

---

applicable only to the federal courts. Second, even in the federal system, however, § 5K1.2 does not prevent a sentencing court from penalizing a defendant for refusing to help authorities investigate others who may be involved in criminal activity; although it prevents the sentencing court from going outside the otherwise applicable guideline range for the defendant, it *does not* prevent the trial court from selecting a more severe sentence *within* that range. *United States v. Klotz*, 943 F.2d 707, 709–710 (7th Cir. 1991); *United States v. Burgos*, 276 F.3d 1284, 1291 n.8 (11th Cir. 2001). Although we acknowledge that this analogy is less-than-perfect, in essence the trial court here took the permissible sentencing range for armed robbery, a maximum of ten years of incarceration, and gave to Kaczynski the most severe sentence within that range.

*Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559, 561 (1980). If the trial court exercises its discretion based on the appropriate factors, its sentence will not be reversed unless it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State,* 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975). As can be seen from Part I, above, the trial court considered carefully the appropriate factors. Moreover, we cannot say that a sentence of ten years for conduct that the legislature deemed worthy of potential imprisonment for forty-five years shocks the community's sense of justice.

*By the Court.*—Judgment and order affirmed.