[Cite as *State v. Lowery*, 2023-Ohio-4444.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0288 |
| | : | |
| DARNELL LOWERY | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 8, 2023

. . . . . . . . . . .

NICOLE RUTTER-HIRTH, Attorney for Appellant

KADAWNI A. SCOTT, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Darnell Lowery appeals from his conviction following a guilty plea to one count of aggravated burglary with a firearm specification.

{¶ 2} Lowery contends the trial court violated his Fifth Amendment privilege against self-incrimination by considering as a sentencing factor his refusal to identify an accomplice who participated in the crime with him.

{¶ 3} We conclude that plain-error review applies and that the trial court's consideration of Lowery's refusal to name his accomplice did not constitute an obvious violation of the Fifth Amendment. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted Lowery on one count of aggravated burglary, four counts of kidnapping, four counts of aggravated robbery, and accompanying firearm specifications. The charges stemmed from an incident in which Lowery and an unidentified accomplice forced entry into a home and held six occupants at gunpoint while threatening to rape and shoot them if they did not surrender money and personal property. Lowery ultimately pled guilty to one count of aggravated burglary with a firearm specification in exchange for dismissal of all other charges and specifications. The trial court accepted the plea and made a finding of guilt.

{¶ 5} At sentencing, defense counsel opined that Lowery was remorseful, that his actions were out of character, and that they were unlikely to recur. Lowery also addressed the trial court, explaining that he was a new father and seeking leniency. He professed deep sorrow and regret. In response, the prosecutor cited victim-impact statements and noted that the six victims still lived in fear because Lowery had refused to disclose the identity of his accomplice to a detective. In advocating for a maximum sentence, the prosecutor stated:

> * * * [The victims] were terrorized still by having to testify, by having to face Darnell Lowery, the man that came into their house and terrorized them along with a co-defendant who Mr. Lowery continues to refuse to give

up.

You know, he had a long interview with Detective Jordan where, you know, they kind of sat down man-to-man and had a heart-to-heart. It is what it is. Darnell left his DNA at the scene. He left it on magazines there but he wasn't going to give up the man that pulled out his penis and threatened to rape those victims.

* * *

So who is that other individual? Who is that monster? There's a lot of mistakes and I've heard a lot about accountability but I don't see the accountability here unless you are going to tell us what happened, who did what. And I understand that there's a code that we won't understand and, you know, Darnell told Detective Jordan there that in his interview originally and I don't know if that's changed or not.

But, Your Honor, I believe that the only sentence that can punish him appropriately within the sentencing guidelines is the maximum sentence to what he pled to. Thank you.

Sentencing Transcript at 8-10.

{¶ 6} Following the prosecutor's remarks, the trial court had the following exchange with Lowery:

THE COURT: Would you like to tell us the name of the person you committed this crime with?

THE WITNESS: Your Honor, I've taken accountability for my actions

and being sorry for my actions.

THE COURT: I just asked you a question. Would you like to tell us who you committed this crime with? You know there's no honor in that. You think you're being honorable by not giving up somebody when the reality is there's 6 people out there terrified that there's another person out there that broke into their house and traumatized them so if you really want to do the honorable thing you would tell these gentlemen who that person was.

THE WITNESS: I mean, that person's not coming home for a long time, may never come home.

THE COURT: Mr. Lowery, I'm not interested in having a conversation with you about how you rationalize not giving this person up. If you would like to tell these gentlemen who it is, it might help you.

All right. Everything you just said then is a bunch of BS about taking responsibility, being remorseful. I don't want to hear any more about that because you just undermined all of that with your pathetic choice not to tell these gentlemen who you committed that crime with.

Now, first off, in your statement to the probation department you said you've been in the system your whole life and never really had a fair shot. Really? In juvenile court where you got the B and E, you didn't get probation? When you got convicted of this attempted offense, this misdemeanor in municipal court, your jail sentence was suspended. You committed a disorderly conduct and you got probation. And then you're

convicted of two felony offenses, possession of drugs, a fifth-degree felony, and attempted illegal conveyance, a fourth-degree felony, and you got probation. And you got sent to West Central.

So let's not say you've never gotten a fair shot. You said this was a mistake. This is not a mistake. This is an aggravated burglary with a firearm specification, a first-degree felony offense. That's not a mistake. That was a choice you made and to call it a mistake, just that tells me that you're not remorseful.

You said you ain't really hurt no one. Like the Prosecutor said, I read 6 victim impact statements of people who are hurt terribly, maybe not physically but they are traumatized. You say you're not a menace to society. You are. You say you don't deserve a decade or more in prison. Thank God that you don't mete out justice in this community because you have no idea what justice is. You do deserve that. You deserve every bit of it and you're going to get every bit of it.

The Court is going to order that you be sentenced to the maximum penalty, an indefinite sentence of 11 to 16 and a half years in prison plus 3 years for the firearm specification. * * *

*Id*. at 10-13.

**{¶ 7}** The trial court journalized Lowery's sentence in a January 31, 2023 judgment entry of conviction. This appeal followed.

**II. Analysis**

{¶ 8} Lowery's sole assignment of error states:

THE SENTENCE IMPOSED UPON MR. LOWERY WAS UNCONSTITUTIONAL BECAUSE IT WAS BASED UPON IMPROPER FACTORS INCLUDING HIS FAILURE TO IDENTIFY HIS CODEFENDANT, IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS

{¶ 9} Lowery contends the trial court violated his Fifth Amendment privilege against self-incrimination by using his silence regarding the identity of his accomplice against him. Specifically, he claims the trial improperly inferred a lack of remorse from his refusal to reveal the accomplice's name.

{¶ 10} Lowery summarizes his constitutional argument as follows;

In this case, the prosecutor argued Lowery's failure to identify his codefendant was an aggravating sentencing factor. In fact, he likened it to refusing to accept responsibility. And it was clearly harmful because the judge echoed the statements and based his sentence on his refusal to identify his codefendant. Not only were the comments made, the record indicates they were the basis for the sentence. It was an error for the prosecutor to comment on Lowery invoking his Fifth Amendment rights and improper for the trial court to base his sentence on the same. This prejudicial error violated his constitutional rights. Therefore, Lowery's case is exponentially troubling because both the state and the Judge remarked on Lowery's implication [sic] of his Fifth Amendment rights, exacerbating the error.

Appellant's Brief at 7-8.

{¶ 11} Given Lowery's failure to object to the trial court's inference of no remorse from his refusal to identify his accomplice, we are limited to plain-error review. *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 765, ¶ 65-67 (applying plain-error review where the defendant did not object to "the trial court's consideration of his decision to remain silent and waive allocution in finding that he lacked remorse"). Plain error requires the existence of an obvious error and a reasonable probability that it affected the outcome of the proceeding. *State v. Hess*, 2d Dist. Champaign No. 2022-CA-24, 2023-Ohio-3658, ¶ 11.

{¶ 12} The Fifth Amendment privilege against self-incrimination generally applies to sentencing hearings. *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). But its application is neither absolute nor universal in scope. In *Mitchell*, the U.S. Supreme Court held that a guilty plea to drug-trafficking offenses did not waive the privilege and that the defendant could not be compelled at sentencing to reveal the quantity of drugs attributable to her. The drug quantity impacted the length of the defendant's sentence. The majority concluded that the Fifth Amendment precluded the trial court from compelling the defendant either to provide that information or to have an adverse inference drawn from her silence. *Id.* at 327-329. It held that the privilege against self-incrimination prevented using the defendant's "silence against her in determining the facts of the offense at the sentencing hearing[.]" *Id.* at 330. The majority left undecided, however, whether a defendant's silence at sentencing may be used as evidence of a lack of remorse. *Id.*

{¶ 13} In *Brunson*, the Ohio Supreme Court did address the use of a defendant's silence at sentencing as evidence of a lack of remorse. The defendant in *Brunson* pled not guilty and was convicted after a jury trial. He remained silent at sentencing, and the trial court used that silence against him to infer a lack of remorse. The Ohio Supreme Court cited *Mitchell* and recognized that the Fifth Amendment prohibits drawing negative inferences from a defendant's silence at sentencing when those inferences involve factual determinations in the case. *Brunson* at ¶ 78. Where a defendant maintains his innocence and proceeds to trial, the Ohio Supreme Court reasoned that inferring a lack of remorse from silence at sentencing necessarily involves factual determinations regarding the circumstances and details of the crime:

It is true that the state has no burden under R.C. 2929.12(D)(5) to prove that a defendant lacks remorse. Rather, that provision requires a trial court to consider whether "the offender shows no genuine remorse for the offense" in its recidivism determination. R.C. 2929.12(A) and (D)(5). That there is no burden on the state under R.C. 2929.12(D)(5) tends to support the conclusion that an exception to the general rule against negative inferences must apply in this situation.

The problem, however, is that for a defendant to have "remorse for the offense," the defendant must necessarily have committed or been involved in the offense. This is based on the plain meaning of "remorse." If a defendant is remorseful at sentencing, that necessarily means that the defendant has sadness, guilt, or regret for his or her involvement in the

offense. While a defendant may have been found guilty of an offense by the jury, this does not mean that the defendant committed the offense. And it must be stated again that remorse is not the same as sympathy—a person with remorse expresses it by acknowledging his or her wrongdoing.

Because "remorse" is a loaded term and showing remorse requires a person to acknowledge that he or she committed an offense, a finding of a lack of remorse necessarily goes "to *factual determinations* respecting the circumstances and details of the crime" (emphasis sic), *Mitchell*, 526 U.S. at 328, 119 S.Ct. 1307, 143 L.Ed.2d 424, because it implicates the defendant's role in the crime. For a criminal defendant who pleaded not guilty and took the case to trial, thus maintaining his or her innocence, a finding of a lack of remorse based on the defendant's silence is to use that silence to infer the defendant's involvement in the crime. * * *

*Id.* at ¶ 79-81.

{¶ 14} We find the present case to be distinguishable from *Brunson*, and we see no plain error in the trial court's reliance on Lowery's refusal to identify his accomplice as evidence of a lack of remorse. As an initial matter, it is far from clear that Lowery's silence regarding his accomplice was in reliance on his Fifth Amendment privilege against self-incrimination. "[P]opular misconceptions notwithstanding, the Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself'; it does not establish an unqualified 'right to remain silent.' A witness' constitutional right to refuse to answer questions depends on his reasons for doing so,

and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim." *Salinas v. Texas*, 570 U.S. 178, 189, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013).

{¶ 15} In *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), the defendant pled guilty to two counts of using a telephone to facilitate heroin distribution. The trial court imposed consecutive sentences based in part on the defendant's refusal to identify other members of the operation. On appeal, the defendant argued that his refusal to cooperate by naming co-conspirators was protected by his Fifth Amendment privilege against self-incrimination and, further, was justified by fears of retaliation. The U.S. Supreme Court disagreed, reasoning:

These arguments would have merited serious consideration if they had been presented properly to the sentencing judge. But the mere possibility of unarticulated explanations or excuses for antisocial conduct does not make that conduct irrelevant to the sentencing decision. The District Court had no opportunity to consider the theories that petitioner now advances, for each was raised for the first time in petitioner's appellate brief. Although petitioner knew that his intransigency would be used against him, neither he nor his lawyer offered any explanation to the sentencing court. Even after the prosecutor observed that the failure to cooperate could be viewed as evidence of continuing criminal intent, petitioner remained silent.

Petitioner insists that he had a constitutional right to remain silent and that no adverse inferences can be drawn from the exercise of that right. We find this argument singularly unpersuasive. The Fifth Amendment

privilege against compelled self-incrimination is not self-executing. At least where the Government had no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion. * * *

*Id.* at 559.

{¶ 16} The *Roberts* majority reasoned that "if petitioner believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate." *Id.* at 560.

{¶ 17} Here nothing in the sentencing transcript or elsewhere suggests that Lowery refused to identify his accomplice based on a fear of self-incrimination. To the contrary, the only indication in the record is that his silence stemmed from allegiance to an unspoken criminal code of honor. Under these circumstances, we find no obvious error in the trial court's failure to construe Lowery's silence regarding his accomplice's identity as an invocation of the Fifth Amendment. Other federal and state courts have reached the same conclusion. *See United States v. Morgan*, 145 F.3d 1343 (9th Cir.1998) ("Morgan contends the district court violated his Fifth Amendment right against self-incrimination when it cited his failure to cooperate with the government as a basis for imposing a sentence at the upper end of the guideline range. Because Morgan did not assert that his failure to disclose information regarding the robbery was privileged, the sentencing court was free to consider his lack of cooperation in determining his sentence."); *Island v. United States*, 946 F.2d 1335, 1339 (8th Cir.1991) ("Island also argues that his refusal to cooperate with law enforcement authorities was based on his

Fifth Amendment right against self-incrimination and that the trial court improperly penalized him for the exercise of this right. Nowhere in the record or transcript of the sentencing hearing, however, can we find any indication of Island asserting his privilege against self-incrimination before sentencing."); *United States v. Gray*, 64 F. Appx. 251, 2003 WL 21242522 (D.C. Cir.2003) ("Assuming appellant had a Fifth Amendment privilege that would have prohibited the district court from considering his silence at sentencing in determining whether he had any remorse, appellant failed to articulate a basis for asserting the privilege."); *United States v. Ortega*, 188 F. Appx. 266, 2006 WL 1880342 (5th Cir.2006) ("Ortega argues that the district court committed plain error by considering that Ortega had not cooperated with the Government in deciding to sentence him to imprisonment rather than probation. This was not error. * * * Ortega argues that consideration of his lack of cooperation violated his Fifth Amendment privilege against self-incrimination. He did not assert the privilege in the district court and, thus, this issue is deemed waived."); *United States v. Gerby*, 41 F. Appx. 312, 317-18, 2002 WL 1023684 (10th Cir.2002) ("We have found no evidence in the record that Gerby ever asserted before the district court that his failure to cooperate was based on a fear of self-incrimination. Given the Supreme Court precedent that is on point * * * the district court did not commit plain error."); *State v. Kaczynski*, 258 Wis.2d 653, 654 N.W.2d 300, ¶ 9 (Wisc. App.2002), quoting *Holmes v. State*, 76 Wis.2d 259, 276, 251 N.W.2d 56 (1977) ("It has long been the law in Wisconsin that, unless a defendant's rights against self-incrimination are implicated (and Kaczynski makes no claim that they are), it is 'entirely proper' for a trial court 'to consider on sentencing, the defendant's cooperativeness as

manifested by his refusal to name his accomplices.' ").

{¶ 18} Finally, the Ohio Supreme Court's recent opinion in *Brunson* is distinguishable from Lowery's case. As set forth above, the *Brunson* majority found it impermissible for a trial court to infer a lack of remorse from a defendant's silence at sentencing. The key distinguishing feature in *Brunson* is that the defendant there pled not guilty and went to trial. The Ohio Supreme Court reasoned that inferring a lack of remorse from silence under those circumstances necessarily involved using that silence to make a finding regarding the facts of the case, namely the defendant's involvement in the crime. Here, however, Lowery's involvement in the crime was undisputed. He pled guilty, thereby admitting his participation. *Brunson* addressed only inferring a lack of remorse from silence when a defendant does not plead guilty. Therefore, it did not resolve the issue before us.

{¶ 19} In a post-*Brunson* case, the Eleventh District recently held that where a defendant pleads guilty, inferring a lack of remorse from his silence at sentencing does not violate the Fifth Amendment. *State v. Gurto*, 11th Dist. Ashtabula No. 2022-A-0045, 2023-Ohio-2351, ¶ 19-21. We note too that Ohio case law preceding *Brunson* permitted a trial court to infer a lack of remorse from silence following a guilty plea without running afoul of the Fifth Amendment. *See State v. Duhl*, 2d Dist. Champaign No. 2016-CA-30, 2017-Ohio-5492, ¶ 31 ("Duhl pled guilty to the crimes. Furthermore, * * * the court here was not trying to draw adverse inferences about the circumstances of the crime in order to punish Duhl more severely. Instead, the transcript clearly indicates that the trial court's focus was on whether Duhl was remorseful for the crimes he had committed."); *State v.*

*Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 33, quoting *Duhl* at ¶ 31 ("[A] trial court does not violate a defendant's right against self-incrimination when it notes that the defendant's silence shows a lack of remorse or an unwillingness to take responsibility for the crime because it is not using the silence 'to draw adverse inferences about the circumstances of the crime in order to punish [the defendant] more severely.' "). In light of the foregoing authority, we see no obvious Fifth Amendment violation arising from the trial court's inference of a lack of remorse based on Lowery's refusal to identify his accomplice at sentencing.

{¶ 20} The case law cited by Lowery fails to persuade us otherwise. He first cites *State v. Smith*, 173 Ohio App.3d 735, 2007-Ohio-6355, 880 N.E.2d 161 (2d Dist.) ("*Smith I*"), and *State v. Smith*, 2d Dist. Clark No. 08-CA-37, 2009-Ohio-1041 ("*Smith II*"). In these related cases, the defendant pled guilty to robbery and received a five-year prison sentence. On appeal, we noted that the trial court appeared to have imposed the sentence in part to penalize the defendant for his refusal to testify against an older brother. We then stated:

We are troubled by the court's placing such emphasis on the appellant's refusal to testify against his older brother. The Fifth Amendment guarantees a criminal defendant's right to stand silent, and courts may not penalize defendants for exercising their constitutional rights. *See North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637; *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220. Because the

trial court appears to have improperly penalized the appellant for asserting his constitutional rights, we find the assignment of error well taken.

*Id.* at ¶ 28.

{¶ 21} On remand, the trial court imposed the same five-year sentence. In so doing, it stated that it was not punishing the defendant for refusing to testify. The defendant again appealed, and we upheld the sentence. As a preliminary matter, we questioned the correctness of the prior ruling, pointing out that the cited case law involved "defendants who exercised their right to go to trial." *Smith II* at ¶ 12. In any event, we found no error in the resentencing, reasoning:

At the sentencing hearing on remand, the trial court explained its reasons for imposing upon Adam Smith the maximum five-year sentence. It stressed the injury inflicted upon one victim, and the fact that Adam Smith already obtained a good deal as a result of the reduction of one of the Aggravated Robbery charges to Robbery, the dismissal of the other Aggravated Robbery charge, and the dismissal of the Complicity and Felonious Assault charges. At no point, during this sentencing hearing, did the trial court express or imply that its decision to impose the maximum sentence was based, even in part, upon Adam Smith's decision to stand upon his right to remain silent. Accordingly, we conclude that this record does not support Adam Smith's claim that the maximum sentence imposed upon him was a vindictive sentence in retaliation for his decision to stand upon his constitutional rights.

*Id.* at ¶ 17.

**{¶ 22}** In *Smith I*, we cited case law for the unassailable proposition that "courts may not penalize defendants for exercising their constitutional rights." *Smith I* at ¶ 28. But the cases we cited had nothing to do with the issue now before us. *Pearce* involved the imposition of a harsher sentence after a conviction on retrial. *Morris* involved punishing a defendant at sentencing for having exercised his right to a jury trial, and *O'Dell* addressed whether a trial court could rely on its perception that a defendant had committed perjury to impose a harsher sentence. A review of *Smith I* and *Smith II* also fails to reveal whether the defendant had invoked the Fifth Amendment at sentencing or whether his silence was motivated by a fear of self-incrimination. Unlike Lowery's case, nothing in either opinion indicates that this court was conducting plain-error review. In any event, unlike *Smith I*, we are unconvinced that the trial court penalized Lowery for exercising a constitutional privilege against self-incrimination.

**{¶ 23}** Lowery next relies on *State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, 903 N.E.2d 676 (10th Dist.). In that case, the trial court cited the defendant's refusal to testify against a co-defendant as evidence of a lack of remorse at sentencing. The Tenth District found a Fifth Amendment violation and reversed. Notably, however, the defendant's own case remained pending when he was asked to testify against the co-defendant who had been involved in the same criminal activity. The Tenth District seized on this fact, reasoning:

> It is undisputed that appellant refused to testify against Michael, whose trial was scheduled to commence before appellant's entry of a guilty plea, even though appellant had previously expressed his willingness to

enter into a plea agreement that had been offered to both him and Michael. Thus, when requested to testify against Michael, appellant's own case remained pending, and appellant retained the constitutional privilege to refuse to give testimony that could be used against him in his own case. The trial court expressly mentioned appellant's refusal to testify against Michael immediately before announcing appellant's sentence. * * *

*Id.* at ¶ 13.

**{¶ 24}** Here, of course, the trial court sought to have Lowery identify his accomplice at sentencing, after he had pled guilty. This key fact distinguishes *Hall* and explains the different outcome.

**{¶ 25}** The final case upon which Lowery relies is *State v. Donald*, 7th Dist. Mahoning No. 08MA154, 2009-Ohio-4638. In *Donald*, the trial court penalized the defendant at sentencing for not testifying at his trial, reasoning: "And the defendant, after the victim and the police officer offered overwhelming testimony against him, chose not to speak at all. So, evidently, he agreed that all that was true the way it was presented." *Id.* at ¶ 9. The Seventh District correctly held that the trial court's reliance on the defendant's exercise of his Fifth Amendment right not to testify at trial was error. *Donald* bears no similarity to Lowery's case. Here the trial court did not penalize Lowery for not testifying at trial. Lowery pled guilty, and the trial court cited his refusal to identify an accomplice at sentencing as evidence of a lack of remorse. Based on our analysis above, we find no plain error in the trial court's doing so.

### III. Conclusion

{¶ 26} Lowery's assignment of error is overruled, and the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.